In re Estate of George C. Benton, Deceased. Charles W. Ward, Trustee, as Claimant, Appellee, v. C. Arch Williams, Administrator pro tem., Appellant.

Gen. No. 14,855.

1. WITNESSES—*what does not disqualify.* If a witness ceases to have an interest in the result of a proceeding in which he is called he is not incompetent to testify against one suing or being sued in a representative capacity.

2. TRIAL—*examination of witnesses.* In the examination in chief of a witness, relative to a conversation, the effort of the examining attorney should be and he should so frame his questions as to draw from the witness what was said by the respective parties to the conversation, that is, in the first place the exact language used, but if that be not possible, then the substance of what each person said, and not the witness' conclusion or inference as to what was said, or as to the state of mind of the person speaking with reference to the subject-matter of his statement. It is the witness' recollection only that is competent testimony.

3. TRUSTS—*when claim of trustee for advances cannot be recovered.* If a trustee advances money to pay a note secured by real estate mortgage given by the deceased whose estate he is handling, he cannot recover such advances out of personal estate of such deceased if such personal estate was not liable for the discharge of the note so secured.

Contested claim in court of probate. Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed. Opinion filed February 15, 1910.

**Statement by the Court.** This cause originated in the filing of a claim for $6,917.50 by Henry P. Merriam and Charles W. Ward, trustees under the last will and testament of George C. Benton, deceased, against the estate of said decedent in the Probate Court of Cook county. On July 16, 1906, the Probate Court disallowed and dismissed the claim and from that order of disallowance Charles W. Ward, sole surviving trustee, appealed to the Circuit Court of Cook county. The cause was tried in the Circuit Court before a jury, a verdict was rendered in favor of the claimant and a judgment rendered upon the verdict against the estate for $7,916.91, on March 7, 1908, to be paid in due course of administration. From that judgment this appeal is prosecuted. As Charles W. Ward was executor of the last will and testament of George C. Benton, deceased, as well as trustee thereunder, as stated, the estate was represented in the Circuit Court, in the matter of this claim, by C. Arch Williams, who was appointed by the court as special administrator to defend the estate against the claim. George C. Benton died, testate, in 1902 and left him surviving Susan D. Benton, his widow, and a granddaughter, Harriet S. Ward (daughter of Charles W. Ward), his only next of kin and heirs at law. Susan D. Benton, the widow, renounced under the will and elected to take under the statute. She subsequently died, in March 1906, and her estate is pending in the Probate Court.

After certain legacies, with which we are not now concerned, and a provision that the widow should have the furniture and household goods, the will of Benton provided for a life estate in his homestead property to his widow, Susan D. Benton, his brother Alphonse S. Benton and the latter's wife·Emma S.,

jointly, and the survivor or survivors. All the rest, residue and remainder of his estate, real or personal, was given to Henry P. Merriam and Charles W. Ward as trustees to manage and control, to pay $150 per month out of the net income to Mrs. Benton during her lifetime and, upon the death of Mrs. Benton, to transfer and convey all the trust estate to the granddaughter, Harriet Stephen Ward, if of age, or if not, then as soon as she attained her majority.

When the widow renounced under the will she became entitled to one-third of the personal estate, absolutely, and a dower interest in the real estate of the deceased.

The claim in question arose out of an indebtedness of $50,000 secured by mortgage to the Berkshire Life Insurance Company upon certain real estate, corner of La Salle avenue and Oak street, in Chicago, purchased by George C. Benton. The deed executed at the time of the purchase bears date July 1, 1901, is made by William H. Pusheck and Helen his wife as grantors, to George C. Benton, upon an expressed consideration of $100,000, and contains the following provision: "This conveyance is made subject to the lien of a certain mortgage to Berkshire Life Insurance Company, dated November 8, 1899, * * * given to secure the payment of fifty thousand (50,000) and interest at 6% per annum; and this conveyance is made subject to all interest accruing after July 8, 1901. Also subject to existing leases, and to all taxes and assessments levied after the year 1900."

William H. Pusheck, grantor in the deed to Benton, had no interest in the property conveyed but, as a matter of convenience, held the title thereof in trust for his brother Charles A. Pusheck, and, at his instance, conveyed the property to Benton.

The $50,000 encumbrance was evidenced by seven notes dated November 8, 1899, one for $35,000 numbered 1 and payable in five years, six for $2,500 each, numbered consecutively from 2 to 7 inclusive. Numbers 2, 3 and 4 were payable on or before two, three

and four years after date, consecutively, and numbers 5, 6 and 7 were each payable on or before five years after date. William H. and Charles A. Pusheck executed the notes jointly. Note No. 2 for $2,500, which matured first, was paid by George C. Benton in his lifetime.

Charles W. Ward, trustee, predicates his claim upon the payment by him, on November 8, 1902, of the two principal notes numbered 3 and 4, and the then accrued interest upon all the notes, except No. 2, and upon the interest which has accrued to him since that date upon the amount he then paid, all of which makes a total of $7,916.91. That the payment was made is undisputed. In the record it is conceded that the remainder of the $50,000 indebtedness has since been paid by Charles W. Ward, trustee, and that the notes representing this remainder have been cancelled; that the payment was made too late for the filing of a claim against the estate by the trustee and that no claim therefor is made. The record does not disclose the date of payment of this remainder, neither does it disclose whether George C. Benton left any personal estate, or whether the real estate mortgaged has been released from the lien of the mortgage.

STEERE, WILLIAMS & STEERE, for appellant.

HOLLAND & ELLIOTT, for appellee.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

Over the objection of the representative of the estate of Benton, Charles A. Pusheck, called as a witness on behalf of the claimant, was permitted to testify. His testimony related to what took place between him and George C. Benton at the time of the purchase of the encumbered property regarding the assumption of the encumbrance by Benton. That permission is assigned as an error. The first section of chapter 51 of our Revised Statutes, the Evidence and Depositions Act, provides, so far as now material, that by reason

of his or her interest in the event of any civil proceeding, either as a party or otherwise, no person shall be disqualified as a witness therein, except as stated in the act. Section two of the act provides that by virtue of the preceding section no party in such proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, when any adverse party sues or defends as executor or administrator of any deceased person, unless when called as a witness by such adverse party. Pusheck not being a party, the question is whether he was incompetent by reason of the provision that no "person directly interested in the event" of the proceeding shall be allowed to testify.

Can the event of this proceeding affect Pusheck, all the circumstances of the case considered? We think not. It is only contended that Pusheck is interested in the event of this proceeding, and consequently an incompetent witness, if he is concerned in the question raised herein whether Benton, in his purchase from Pusheck, assumed the $50,000 indebtedness. In view of the facts disclosed by this record we find, irrespective of the testimony of Pusheck, that, when he was called upon to testify and for a long time prior thereto, it was absolutely immaterial to Pusheck whether Benton had or had not assumed the $50,000 indebtedness. The facts disclosed by the record are such that at the time Pusheck testified he was not under a present or contingent liability upon the notes evidencing that indebtedness, under no circumstance could liability on his part thereafter arise upon those notes. As between Pusheck and Benton the real estate securing the payment of that debt became the primary fund for its payment through the sale and the deed of conveyance executed by Pusheck to Benton. This is established by the terms of the deed. That the effect of the sale and conveyance is, to that extent, favorable toward the release of Pusheck from liability for the debt is indisputable. Under some circumstances it would have been of advantage to Pusheck to have had

it judicially established, at the time he testified, that Benton assumed the debt at the time of his purchase. But so far as present or future liability at the time he testified was concerned, such was not the case here. No one will contend that, when living, Benton, while continuing to own and hold the real estate under the deed from Pusheck, could, by acquiring the notes, or any of them, in question in any manner, have recovered thereupon from Pusheck. So long as that real estate continued to be held by an heir or devisee of Benton under that deed, neither his personal representative, the administrator, nor the claimant, the trustee, who had acquired the real estate by devise from Benton, could, in any event, recover from Pusheck upon those notes. It appears from the record that the first note which became due of the $50,000 was paid by Benton in his life-time, when it became due. Ward testified that on November 8, 1902, after Benton's death, he, as trustee, paid notes numbered three and four, with certain interest, not that he purchased or took an assignment of these notes. Indeed he states that he paid them because the Berkshire Life Insurance Company, the holder, threatened to foreclose and made some demand which he regarded as unreasonable. The evidence shows that these two notes were marked paid and thereby cancelled. It also appears that later Ward, as trustee, paid the remaining notes and the record shows that these remaining notes have been marked paid and are thereby cancelled. There is a probability that they were paid in 1904, when they became due. Thus it appears that, while owning and holding that real estate which, under the deed from Pusheck and so far as he is concerned, has, since Benton became owner thereof, been the primary fund for the payment of the indebtedness, Benton or his devisee has paid all the notes evidencing the debt and that all the notes have been cancelled. Under these circumstances we are compelled to hold that when the notes were paid the fee and the mortgage interests merged and the debt was then ex-

tinguished, at least as far as Pusheck was concerned. There is not the slightest evidence to indicate any intent to keep the indebtedness alive after the making of the payments nor is there room for indulging in any legal presumption that there was such intent, as against Pusheck. No principle of law or equity would now permit a present holder of these notes or any of them, or any one who might acquire them or either of them, to hold Pusheck liable by reason thereof. When Pusheck testified there was no present liability or possibility of any future liability on his part in respect of these notes. Pusheck was a competent witness.

Dr. Pusheck is the only witness on the subject of assumption of the mortgage indebtedness by Benton. Unless his testimony establishes that there was a parol assumption of the debt, by Benton, the terms of the purchase stand as shown by the deed from Pusheck. Pusheck testified twice—first in the Probate Court and then in the Circuit Court. It appears from his testimony that he did not personally conduct the negotiations which resulted in the sale. He met Benton, however, three or four times in the course of the negotiations. Three agents conducted the negotiations; two of these are dead and the third is insane.

In determining the question of assumption we are obliged to analyze more closely and comprehensively the character and probative value of Pusheck's testimony because of the exercise of less care by examining counsel than should have been exerted in the examination of this witness. In the examination the effort should have been to ascertain what was said by the parties—Benton and Pusheck—respectively, on the subject in question, rather than toward obtaining the witness' conclusion or inference as to Benton's state of mind upon the question or the witness' conclusion as to the result, after they were through, of his negotiations or conversations with Benton. It may be that owing to lack of recollection the very language used by the parties in conversing could not have been

obtained; but, if that were so, then the substance of the remarks made should have been elicited. When a witness does remember the language used, the substance is not competent; and before resorting to the substance it should be ascertained whether the witness recalls the language itself. If a witness can remember neither the language used nor the substance of what was said by either of the respective participants in a conversation as to which he is called upon to testify, then no testimony of that witness is competent to charge either of the participants, in respect of what was then said, as upon a promise or agreement. Judgments by courts cannot be predicated upon the conclusions or inferences drawn by a witness, from what has been said, as to what has been promised, agreed or assumed by another, if objection is made, nor upon a witness' imagination in that regard, however honest the witness may be. In determining upon rights and liabilities it is only the recollections of witnesses that can properly influence the courts. In a legal controversy it is the function of the court—not of the witnesses—to draw the conclusions and determine whether anything has or has not been "assumed," "promised" or "agreed" in a particular conversation involved, after the court has heard the testimony as to the language, in *verbatim* or in substance, that was used by the parties respectively. A rule that witnesses should inform the court what, in a conversation, a party had "assumed," "promised" or "agreed" and that the court, by its judgment, should charge parties accordingly would be an absurdity. In Ram on Facts, 230, is to be found an interesting incident in this connection which occurred in a celebrated trial in 1858. Counsel asked the question of a witness: "Did you go as a spy?" The Chief Justice, Lord Campbell, interposed, saying: "You had better get the facts from him, and you can draw any inference you please." In objecting the Attorney-General then said counsel has a right to inquire minutely into all the witness has said or done, but he has no right whatever to put

a question that embodies his own characterization or description of something. The question being insisted upon the Chief Justice, after consulting with the other learned judges, Chief Baron Pollock, Mr. Justice Erle and Mr. Justice Crowder, held that the question was irregular and improper "not on the ground that the witness is called on to criminate himself, and may refuse to answer, but on the ground that he is called upon to draw an inference from the facts."

Dr. Pusheck testified in the Circuit Court in December, 1907. He had previously testified in the Probate Court, in the matter of this same claim, in April 1906. In the Circuit Court, substantially, the first four questions asked of him, bearing upon the question of the assumption of the mortgage indebtedness by Benton, were: "I will ask you, doctor, whether Mr. Benton assumed that mortgage?" "Did Mr. Benton promise to pay that mortgage?" "What was the purchase price agreed upon?" and "Why was this $100,000 named in the deed?" As the question then before the court was whether, in one of the three or four conversations, there had been a parol assumption of the mortgage indebtedness by Benton, the questions called, merely, for the conclusions of the witness and were all incompetent. The witness was, however, only permitted to answer the last two. Over objections on the ground that conclusions only were called for and testified to, in response to those two questions and thereafter, the witness testified that the purchase price agreed upon was $70,000; that $100,000 was inserted in the deed as the consideration because that was really the value of the property; that Benton paid $20,000 in cash and "was" to "retain the balance to wipe out the notes as they became due;" that Benton retained this balance, "Because there was a mortgage of $50,000 on it (the property), which he was to pay when it became due." Whereafter counsel asked the question: "He retained that to pay the mortgage?" and the witness answered: "Yes sir." This is all the testimony of the witness,

upon direct examination, that it is at all material to consider. After the last question and answer opposing counsel said: "I object to that as a conclusion of the witness." The court replied to this objection by asking: "Is that what was said there?" to which the witness replied: "Yes sir." Assuming, as is most probable, that by "that, what was said," in his question, the trial judge referred to the last question and answer, it still remains quite clear that the witness was testifying not to what was said by any particular person, but to his conclusion, and it is perfectly clear that the witness definitely testifies to nothing as having been said by Benton. Indeed we are in nowise informed by the testimony of the witness who said that which the trial judge referred to—whether it was said by Benton or Pusheck. At no time was the witness asked what any one said; nor, except in that vague and uncertain way drawn from the witness by the court, does the testimony of the witness indicate or purport that the witness undertook to testify to what anyone had said. The witness does not testify as to when the conversations spoken of or any of them took place—whether early in the negotiation for the purchase, at the time of the execution or of the delivery of the deed, or after the deed of purchase had been delivered. Upon cross-examination it developed that Dr. Pusheck had testified in the Probate Court to the effect that he sold the property for $20,000 cash, subject to the mortgage, and that that was all there was to it; that there was no different arrangement between himself and Benton than as shown by the deed, except in respect to the consideration being less than $100,000, the sum stated in the deed; and that all there was to the transaction was that he, the witness, gave the warranty deed for $20,000, subject to the encumbrance.

The testimony of Dr. Pusheck having been most carefully considered, the nature, character, and substance of all his testimony having been regarded together with all the facts and circumstances, we have

arrived at the conclusion that there is no evidence whatever in this record upon which a finding that Benton promised to pay the $50,000, or that he assumed that mortgage indebtedness as part of the consideration, can properly and justly be based.

It is clear to us that the terms of the purchase were only as stated in the deed of conveyance. Benton took the property subject to the encumbrance. It follows that the claimant can recover nothing from the estate however much it would seem Benton would have preferred this mortgage indebtedness should have been paid by his personal estate rather than that it should be taken out of his granddaughter's estate.

The judgment of the Circuit Court will be reversed and the cause will not be remanded.

*Reversed.*